UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09-cv-418-RJC-DSC

| | |
|---|---|
| SLEP-TONE ENTERTAINMENT CORPORATION et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | **ORDER** ) ) |
| KAY et al., | ) ) |
| Defendants. | ) ) ) |

**THIS MATTER** comes before the Court upon Plaintiffs Slep-Tone Entertainment Corporation ("Slep-Tone") and Sound Choice Studios' ("SCS" and together with Slep-Tone, "Plaintiffs") Motion for Entry of Default Judgment against the only remaining defendants in this action, John Halliburton ("Halliburton") and David Patton ("Patton"), pursuant to Federal Rule of Civil Procedure 55(b)(2). (Doc. No. 22). Neither Halliburton or Patton opposed the Motion for Entry of Default Judgment and the time for doing so has expired.

I. BACKGROUND

On September 25, 2009, Plaintiffs filed a Complaint alleging trademark infringement and unfair competition. (Doc. No. 1). Patton was properly served with the summons and Complaint on January 19, 2010, (Doc. No. 6), and Halliburton was properly served on January 21, 2010, (Doc. No. 7). Halliburton and Patton are not infants or incompetents. Halliburton and Patton nonetheless failed to answer or otherwise defend the action within the time permitted by the Federal Rules of Civil Procedure. Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of Court entered Patton's default on April 1, 2010, (Doc. No. 16), and Halliburton's default on November 15, 2011, (Doc. No. 21).

Slep-Tone is the owner of U.S. Trademark Registration No. 1,923,448, for SOUND CHOICE®, and of U.S. Trademark Registration No. 2,000,725, for a display trademark SOUND CHOICE & Design® ("the Marks"). (Doc. No. 1 at 11). Plaintiff Slep-Tone has consistently used the "®" symbol to denote the registration of the Marks and thereby to give notice to the public that the Marks are federally registered. (Id. at 12).

Halliburton and Patton are individuals engaged in the business of providing karaoke entertainment. (Id. at 6). Halliburton and Patton have each used a reproduction, counterfeit, or copy of the Marks in connection with his provision of karaoke services, by displaying[1] that reproduction, counterfeit, or copy during the provision of his services. (Id. at 14).

Halliburton and Patton have also copied, shared, distributed, and/or sold digitized copies of karaoke songs marked with the Marks via hard drives, USB drives, CD-Rs, or the Internet. (Id. at 8-9). Halliburton and Patton did not have a license to use Plaintiffs' tracks in connection with their provision of karaoke services. (Id. at 9, 14). Halliburton and Patton's unauthorized use of counterfeits of the Marks is likely to cause consumer confusion by deceiving their customers and/or patrons into believing that the services are being provided with Plaintiffs' authorization. (Id. at 14, 15).

Halliburton and Patton had at least constructive knowledge and, at least from the date of service of the Complaint upon them, actual knowledge that their activities were contrary to Slep-Tone's trademark rights.

Halliburton's activities indicate that he is in possession of at least eight karaoke systems

---

[1] The on-screen graphics displayed by Halliburton and Patton included the song title, artist, and marks identical to the Marks Slep-Tone has federally registered. (Doc. No. 22-1: Declaration of Kurt Slep at ¶¶ 5, 8).

that contain counterfeit materials. (Doc. No. 22-3: List of Halliburton Shows). Patton's activities indicate that he is in possession of at least one karaoke system that contains counterfeit materials. (Doc. No. 22-2: List of Patton Shows). Plaintiffs have elected to receive an award of statutory damages from Halliburton and Patton.

## II. DISCUSSION

Because of their default in this matter, Halliburton and Patton are deemed to have admitted those facts alleged in the Complaint that are material to Plaintiffs' claims against them. See Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.").

By using counterfeit materials bearing the Marks to put on karaoke shows and by displaying the Marks during the course of those shows, Halliburton and Patton have committed acts that are likely to cause confusion among consumers of their services as to the authorization, sponsorship, and affiliation of their services with Sound Choice. In particular, consumers who use the Defaulting Defendants' services are likely to believe, falsely, that the Defaulting Defendants have made use of genuine, authorized materials during the conduct of their business. Accordingly, the Defaulting Defendants' activities constitute trademark infringement involving counterfeiting.

The same acts of Halliburton and Patton constitute a violation of Section 43(a) of the Trademark Act of 1946, as amended, in that the display of Plaintiffs' Marks constitutes a false designation of the origin of those materials.

Plaintiffs seek statutory damages pursuant to 15 U.S.C. § 1117(c), for trademark infringement involving counterfeiting. 15 U.S.C. § 1117(c) states:

> In a case involving the use of a counterfeit mark . . in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

Plaintiffs suggest that an award of statutory damages of $25,000 against Patton, on the basis of his single infringing system, and of $200,000 against Halliburton, on the basis of his eight infringing systems,[2] are appropriate for this default judgment.

While the precise financial impact of the infringement is not necessarily material to the determination of the award because statutory damages are awarded on a per-mark basis, Plaintiffs contend that the reasonableness of their proposed award can be tested through fact-based estimates. (Doc. No. 22 at 14). Specifically, the typical market for services that Halliburton and Patton provide (or provided) bear a per-show price of between $150 and $250 for public shows and significantly more for private shows. (Doc. No. 22-1 at 5: Declaration of Kurt J. Slep). Patton played three regular weekly shows at Coopers Ale House in Greensboro, North Carolina. (Doc. No. 22-2: List of Patton Shows). At that rate, Plaintiffs conservatively estimate that Patton would have received approximately $23,400 per year in annual revenue from his Coopers Ale House shows alone. Halliburton, by contrast, played approximately 31

---

[2] Plaintiffs state: "Halliburton's simultaneous operation of eight systems allows him to earn eight times the revenue of a single-system operator like Patton; to do eight times the damage to the Plaintiffs' business goodwill; to have eight times the economic impact upon the market for karaoke services; and to drive eight times as many legal operators out of the business. Accordingly, a figure of eight times the damages is appropriate." (Doc. No. 22 at 14 n.1).

4

regular shows per week, which would (by the same terms) produce an estimated $241,800 in annual revenue. (Doc. No. 22-3: List of Halliburton Shows). The Court finds that the statutory damage awards as proposed by Plaintiffs are supportable by the record and meet the criteria established by the statute and by case law. See 15 U.S.C. §1117(c); EMI April Music, Inc. v. White, 618 F. Supp. 2d 497, 508 (E.D. Va. 2009) (stating that statutory damages are intended for the restitution of profit or the reparation of injury and to deter wrongful conduct); see also In re Slep-Tone Entm't Corp., No. 5:11-cv-32, 2011 WL 5244684 (N.D. Fla. Nov. 2, 2011).

Having reviewed the claims asserted in the Complaint, (Doc. No. 1), and the evidence submitted in connection with Plaintiffs' Motion for Default Judgment, (Doc. No. 22), the Court finds that Plaintiffs' Motion should be, and hereby is, **GRANTED**. The Court also finds that Plaintiffs are entitled to a permanent injunction pursuant to 15 U.S.C. § 1116, which shall issue in a separate order.

## III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Pursuant to 15 U.S.C. § 1117, judgment is entered in favor of Plaintiffs Slep-Tone and SCS, jointly, and against Defendant Halliburton in the amount of two-hundred thousand dollars ($200,000), individually, and against Patton in the amount of twenty-five thousand dollars ($25,000), individually;

2. Interest from the date of entry of this judgment shall accrue at the legal rate, pursuant to 28 U.S.C. § 1961; and

3. Pursuant to Fed. R. Civ. P. 54(d) and 15 U.S.C. § 1117, Plaintiffs are awarded their costs in this action.

Signed: February 2, 2012

Robert J. Conrad, Jr.
Chief United States District Judge

6